*Wytheville.*

MATNEY v. M. S. AND H. A. RATLIFF, ADMINISTRATORS.

JULY 7, 1898.

1. SPECIFIC PERFORMANCE—*Doubtful Title.*—A court of equity will not decree the specific performance of a contract for the sale of real estate at the instance of the vendor if there be any reasonable doubt as to his ability to make such title as he contracted to make.

2. GRANT FROM COMMONWEALTH—*Failure to enter Land on Books of Commissioner—Forfeiture—Subsequent Grant by Commonwealth.*—The failure of the grantee of the Commonwealth to have the lands granted to him entered on the books of the commissioner of the revenue for the purposes of taxation, and to pay taxes thereon, operates as a complete forfeiture of the lands to the Commonwealth, and no judgment or decree, inquest of office, or other matter of record is necessary to consummate and perfect the forfeiture ; and where lands have been thus forfeited, the original grant constitutes no cloud on the title of a subsequent grantee of the Commonwealth.

3. CHANCERY PLEADING—*Demurrer.*—A statement in the answer of a defendant that he reserves " unto himself all just exceptions to the many deficiencies by a demurrer to a bill " is not a demurrer to the bill.

4. SPECIFIC PERFORMANCE—*Bill by Administrators—Parties—Demurrer—Answer on Merits—Objections for First Time in Appellate Court.*—A bill filed by administrators for the purpose of enforcing a contract made by them for the sale of their decedent's land which fails to allége their authority to sell the land, and to which the heirs of the owner are not made parties, is bad on demurrer. But if the purchaser makes no objection to these defects, and answers, setting up a defence on the merits, he cannot make the objection for the first time in this court, especially when it appears from a deed filed as an escrow with the bill that the heirs authorized the sale, were parties to the contract of sale, and have made a deed to the purchaser with covenants of general warranty to be delivered to him when all the purchase money is paid.

Appeal from a decree of the Circuit Court of Buchanan county pronounced December 1, 1897, in a suit in chancery wherein

appellees were the complainants, and the appellant was the defendant.

*Affirmed.*

The opinion states the case.

*R. Walter Dotson* and *Samuel W. Williams,* for the appellant.

*Finney & Stinson,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The bill in this case was filed by the appellees for the purpose of having a contract for the sale of a tract of land specifically executed. They allege that, as administrators of John M. Ratliff, they sold to the appellant in May, 1892, a parcel of land containing 643 acres; that they executed a bond to him for title, by which they bound themselves to make, or cause to be made to him, a deed with covenants of general warranty when the purchase money was fully paid; that the appellant executed to them, for the unpaid purchase money, his two bonds, which, subject to certain credits, are still due and unpaid, and that the appellant refuses to pay them. They also file with it as an escrow a deed executed, as they allege, " by the proper parties," conveying the land to the appellant, with covenants of general warranty, and ask to have the land subjected to the payment of their debt, and, if the proceeds arising from its sale are not sufficient to satisfy it, they pray that certain other property which they have attached may be subjected to the payment of the residue.

The appellant filed his answer, in which he admitted that he made the purchase, as alleged in the bill, and averred that the appellees, " who were the administrators of John M. Ratliff, deceased, together with the remaining surviving heirs at law of the said John M. Ratliff, deceased, made, signed, and exe-

cuted a title bond " to him, and filed a copy of it as an exhibit with his answer. He also averred that, when he entered into the contract for the purchase of the land, the parties to the title bond represented to him that they had a fee-simple title to the land, and were in a condition to comply with the terms and conditions of the bond for title, and that, after paying about the sum of $800 on the purchase price of the land, he ascertained that they (complainants) were not in the possession of the land, and could not make such a deed as they had undertaken and obligated themselves to do, for the reason that, on the 15th day of June, 1795, the Commonwealth had granted to John Johnson 22,134 acres of land which covered and included all the tract of land which appellant had purchased. He filed with his answer, as an exhibit, a deed from Johnson, the grantee, conveying the land embraced in the grant to John McClanahan and John Woods. He averred further that the Johnson grant was prior to that under which the appellees claimed. He further averred that the lands purchased by him were wild and uncultivated, that neither the appellees, himself, nor any other person, had ever been in possession of the same, and that there is nothing on record to show that the title to the Johnson grant had ever been forfeited or escheated to the Commonwealth, but that it was in fact now vested in the grantees of Johnson, and that his (appellant's) vendors could not make good title to it.

The court directed a special commissioner to report upon the status and condition of the title of the appellees, whether they could convey such title as they had agreed to convey, and to enquire specially into the title of Johnson, or those who claim under him, and whether or not that title had been forfeited to the Commonwealth when the grant under which the appellees claimed was issued, and how long they, and those under whom they claim, had been in adverse possession of any part of the land claimed by them.

The commissioner reported that the Johnson grant for

22,134 acres was issued on the 30th day of June, 1795; that he conveyed the same land to John McClanahan and William Woods on the 14th day of April, 1796; that McClanahan and Woods conveyed it on the same day to Nicholas Clapper, and that the land is now claimed by his heirs, but that he was unable to learn their names, or where they resided.

He further reported that the 22,134 acres had never been entered upon the commissioner's books for taxation in Buchanan nor in Tazewell county; that neither Johnson nor those claiming under him had ever paid any taxes upon the land nor been in possession of it.

He also reported that the land in controversy had been granted by the Commonwealth to S. W. White on the 1st day of January, 1859, and was included within and covered by the Johnson grant; that White had caused the land in controversy to be entered upon the commissioner's books for taxation, and that he and those claiming under him had kept the taxes on it paid; that White had departed this life, and that his heirs had sold and conveyed the land to M. S. Ratliff and John M. Ratliff (now deceased) on the 16th day of April, 1889; that neither the appellees nor those under whom they claim had been in possession of the land prior to the sale to the appellant in 1892, since which time he had been in possession of and cultivating a part of it. He reported that if the title to the Johnson grant had been forfeited to the Commonwealth it was for his failure to put it upon the commissioner's books for taxation, but that he was unable to say whether or not the appellees could convey a good title to the land; that he had reported the facts, and would leave that question to be determined by the court.

Upon the hearing of the cause the court was of opinion that the contract should be specifically executed, and so decreed.

From that decree this appeal was taken.

The only error assigned in the petition for appeal is that the court, in decreeing a specific execution of the contract, re-

quired the appellant to accept a title upon which there was a cloud, by reason of the prior grant to Johnson.

It is well settled that a court of equity will not decree the specific execution of a contract on the application of the vendor if there be any reasonable doubt as to his ability to make such title as he contracted to make. 2 Minor's Inst. (4th Ed.), 803, and cases cited; *Clark* v. *Hutzler*, *ante* p. 73; Pomeroy on Spec. Per. of Con., sec. 204.

Does the Johnson grant, under the facts of this case, cast such a doubt upon the title of the vendors?

That grant was issued more than one hundred years ago. The land has never been placed upon the books of the commissioner of the revenue for the purpose of taxation, and no taxes have ever been paid upon it by Johnson, or those claiming under him. That being the case, under the decisions of this court construing the provisions of our statutes enacted from time to time, making it the duty of the owners of land to have their lands entered upon the books of the commissioner of the revenue for the purposes of taxation, it is clear that the Johnson title was forfeited to the Commonwealth. *Staats* v. *Board*, 10 Gratt. 400; *Wild's Lessee* v. *Serpell*, *Id.* 405; *Hale* v. *Branscum*, *Id.* 418; *Levasser* v. *Washburn*, 11 Gratt. 572.

The fact that there is nothing of record to establish such forfeiture, does not make it the less complete. For the same cases above cited decide that the forfeiture becomes absolute and complete by the failure to enter the lands upon the books of the commissioner of the revenue, and to pay the taxes, &c., in the manner prescribed by the act of February 27, 1835, and that no judgment, or decree, inquest of office, or other matter of record, is necessary to consummate and perfect the forfeiture.

Where, upon a given state of facts, the law is settled that a title is absolutely forfeited to the Commonwealth, it cannot be said, when those facts are shown to exist, that it is a cloud upon the title of a subsequent grantee of the Commonwealth for the same land.

We are of opinion, therefore, that the Johnson grant did not create a cloud upon the title of the vendors in this case, and that the Circuit Court did not err in so holding.

In his brief, but not in his petition for appeal, the appellant insists that the court erred in overruling his demurrer to the bill. There is nothing in the record to show that a demurrer was filed. The only reference to a demurrer in the case is a statement in the appellant's answer that he reserves "all just exceptions to the many deficiencies by demurrer to a bill exhibited," &c. Under the most liberal construction of pleadings, that statement could not be regarded as alleging that the bill was insufficient in law.

It is also assigned as error in the brief that the suit was brought by the personal representatives of John M. Ratliff, deceased, without alleging in their bill their authority to sell their decedent's lands, and without making his heirs parties to the suit.

The bill is defective in both these respects, and if it had been demurred to, the court would doubtless have sustained the demurrer and required it to be amended before granting the relief prayed for. The appellant, however, made no objection to these defects, and filed his answer, in which he states that he made his contract of purchase with the personal representatives of John M. Ratliff, deceased, and that they, with the other heirs at law of the decedent, signed and executed a bond to him for title.

There is filed with the bill as an escrow a deed conveying the land to the appellant, signed and acknowledged by all the parties who signed the title bond, in which it is recited (as is admitted in the answer of the appellant) that they are the heirs of John M. Ratliff, deceased.

It thus appears from the record that the heirs of John M. Ratliff authorized his personal representatives to sell the land, that they were parties to the contract of sale, and that they have made a deed conveying the land to the appellant, with

covenants of general warranty, ready to be delivered to him when the purchase money shall have been fully paid. Nothing could be gained by requiring the bill to be amended so as to show the authority of the personal representatives to make the sale, and to make the heirs of their decedent, parties to the suit, so as to extract title from them, since the record shows by what authority the sale was made, and that the title of the heirs has been conveyed by a deed on file in the cause, ready to be delivered upon the payment of the residue of the purchase price.

Upon the whole case, we are of opinion that the decree complained of should be affirmed.

*Affirmed.*