GILLEN v. WAKEFIELD STATE BANK.

1. RECEIVERS—BANKS AND BANKING—JUDGMENT CREDITORS NOT ENTITLED TO AID OF COURT UNLESS JUDGMENT OBTAINED.

Where a livestock dealer bought from farmers, gave checks for his purchases, and had an understanding with the bank that the checks would be honored, and the proceeds of the shipment be deposited in the bank to cover said checks, but the bank refused to honor them, and, instead, credited the proceeds of the shipment on prior indebtedness of the dealer to it, the drawees of the checks, not being judgment creditors, were not entitled to the appointment of a receiver to recover the property of the dealer in the hands of the bank or others (3 Comp. Laws 1915, §§ 13382, 13383), and the appointment of a receiver by the court was therefore not warranted.

2. APPEAL AND ERROR—PARTIES—AMENDMENT IN SUPREME COURT.

Although the appointment of a receiver was not warranted, and therefore he was not a proper party to a suit to establish a trust in funds deposited in a bank for the payment of certain checks, yet, such suit having been instituted by him and having been tried and final decree entered, an amendment is permissible in the Supreme Court under 3 Comp. Laws 1915, §§ 12362, 12364, 12478, dropping the receiver as a party and substituting in his stead the real parties in interest, the maker and drawees of the checks.

3. EQUITY—JURISDICTION WILL BE RETAINED TO GRANT COMPLETE RELIEF.

When a court of equity has jurisdiction for any purpose, it will retain it to grant complete relief.

4. TRUSTS—FRAUD—EQUITY.

If one person has obtained the property of another by false representations, unconscionable conduct, fraud, or deceit, a court of equity will convert the fraudulent holder of the property into a trustee for the use and benefit of the true owner, and preserve the property itself as a fund for the purpose of restitution to, or recompense of, the true owner thereof.

On right of bank receiving deposit for purpose of meeting certain checks or classes of checks to divert deposit to other uses, see annotation in L. R. A. 1916C, 183; 24 A. L. R. 1111; 39 A. L. R. 1138.

5. BANKS AND BANKING—TRUSTS—MONEY DEPOSITED TO PAY CER-
    TAIN CHECKS MAY NOT BE CREDITED ON DEPOSITOR'S OLD IN-
    DEBTEDNESS.   :
    .Where a bank agreed with a livestock dealer that it would
        honor his checks given in payment of stock, and would
        apply to such purpose the proceeds of the shipment, which
        were to be deposited with it, said proceeds, when deposited,
        were impressed with a trust, of which the holders of the
        checks were beneficiaries, and the bank could not apply said·
        proceeds upon the dealer's old. indebtedness to it.

Appeal from Lenawee; Chester (Guy M.), J., pre-
siding. Submitted January 15, 1929. (Docket No.
115, Calendar No. 33,194.) Decided March 28, 1929.

Bill by John Gillen, receiver for Philip R. Cole-
grove, against the Wakefield State Bank to establish
a trust·in certain funds. From the decree rendered,
defendant appeals. Modified and affirmed.

*Leland F. Bean,* for plaintiff.

*H. Thane Bauman (Miller, Baldwin & Boos,* of
counsel), for defendant.

POTTER, J.   William R. Poucher, as receiver of
Philip R. Colegrove, filed the bill of complaint
herein for discovery, and to declare a fund, arising
from the sale of livestock by Colegrove, deposited
in the defendant bank and set off by the bank against
Colegrove's prior indebtedness thereto, a trust fund
for the benefit of ·Colegrove's creditors, and for
other relief. Colegrove was engaged in the business
of livestock dealer in Morenci and vicinity, shipping
from various points. He did his banking business
with defendant for several years. He was a farmer,
shipping his own stock, the stock of other farmers
co-operatively, and buying and selling livestock on

his own credit. Generally he shipped weekly. January 1, 1924, he owed the defendant bank notes; one for $1,500, indorsed by his father, due in six months; another for $1,000, not indorsed, due in six months; and a total of $1,660 on notes given in December, 1923, payable in five days, to cover overdrafts for checks given by him to pay for stock shipped in December, 1923. The proceeds of the shipment were deposited January 7, 1924, and credited to Colegrove's account, and the $1,660 in five-day notes were paid by charging them to his account. Colegrove's shipments ranged in volume from $10,000 to $32,000 a month. The bank gave him credit to pay for each of his shipments. He gave checks to the farmers in the vicinity in payment for stock and gave the bank five-day notes to take care of the checks until the return of the proceeds of the shipments, which proceeds were deposited in the bank. The proceeds of each shipment were to be first applied in payment for the stock last shipped. Shipments were sometimes larger than expected, and Colegrove's checks would exceed the amount of his bank balance, including his notes to the bank. He, in such case, covered these overdrafts by new notes. The State banking commissioner objected to these overdrafts. It was arranged between Colegrove and the bank that the bank should make out notes and sign Colegrove's name to them to cover these overdrafts. The State commissioner of banking objected to these notes because they did not bear Colegrove's genuine signature. It was then agreed between Colegrove and the bank that he was to sign packages of printed blank notes, and the bank could fill out the notes in the proper amount to cover his overdrafts to meet the payments of checks given by Colegrove for stock. In pursuance of this agree-

ment Colegrove signed and delivered two pads or packages of such blank notes and gave the bank authority to fill in the blank spaces. Under this arrangement Colegrove bought stock, gave checks, shipped and sold the stock, collected the proceeds of sales and deposited such proceeds in the defendant bank. The bank cashed his checks, and in case he did not have sufficient money in the bank to cover his checks, filled out blank notes signed by Colegrove and advanced him the necessary credit to cover his checks. It furnished him a copy of its ledger sheets showing his credits from shipments and notes and showing checks and notes paid by him. This ledger sheet did not list Colegrove's unpaid notes. Colegrove paid little attention to these ledger sheets. Both he and the bank apparently were under the impression Colegrove was making money. In February, 1925, before Colegrove made his last shipment of livestock and before he issued his checks therefor, the cashier of defendant bank told him the bank books showed he owed the bank approximately $8,000. Both the cashier and Colegrove apparently thought there was a mistake somewhere. Colegrove said to the cashier of defendant bank, if he owed $8,000 he would not ship the stock he had engaged for that week because he did not have any money to pay for it. The cashier of defendant bank told him to go ahead and make the shipment. It was agreed between the bank and Colegrove that this shipment should be made as all others had been made. Colegrove understood his checks therefor would be paid by the defendant bank, using his five-day notes to meet the checks, and the bank would apply the proceeds of the shipment in payment of the checks given in payment therefor. In pursuance of this arrangement, Colegrove took in the stock of the drawees of

the checks involved herein, for shipment, and issued and delivered his checks therefor. The stock was shipped and sold, the proceeds of the sale collected by Colegrove and deposited in defendant bank. The bank set off the credit arising from the deposit of the proceeds of this last shipment against Colegrove's former indebtedness to the bank and refused to pay his checks given for the livestock in the last shipment. The checks were protested upon presentation. Not until after the proceeds of the sale of the last shipment of stock made by Colegrove were deposited in the defendant bank did he ascertain his checks were being protested or his credit withdrawn by the bank. It was the custom and practice of the bank to pay Colegrove's checks issued in payment for each shipment; to fill out his notes executed in blank with the proper amounts; and to extend him credit to the amount of these notes. When remittance was made on the shipment, it was credited to Colegrove's account, and by agreement between Colegrove and the bank, it was authorized to apply the proceeds of each shipment in payment of the notes given by him for that amount. Before, and at the time of the agreement between Colegrove and the bank relating to the last shipment, it was known to both Colegrove and the bank that Colegrove was insolvent, unless there was a mistake in the account between him and the bank. There was no mistake. When Colegrove refused to make the last shipment unless it was to be paid for, the bank, through its cashier, did not withdraw Colegrove's credit, but advised him to take in and ship the stock. It kept Colegrove's signed notes and received the proceeds of this last shipment of stock made by Colegrove, and then set off the deposits against Colegrove's prior indebtedness to it.

Before this suit was started, several general creditors of Colegrove filed a bill in the circuit court for Lenawee county, in chancery, alleging they were creditors, representing themselves and other creditors; that Colegrove had been engaged in buying and selling stock and had issued a number of checks on the bank here made defendant, which checks had been refused payment and protested for want of funds; that Colegrove was insolvent and certain causes of action existed against certain parties, whereby assets of Colegrove might be recovered in proper proceedings by a receiver; that such receivership would save a multiplicity of suits and large expense to the creditors of Colegrove, and be for the best interests of all concerned. Colegrove admitted the allegations contained in the bill, and thereupon William R. Poucher was appointed receiver and began this suit. He has since died, and the plaintiff John Gillen has been appointed receiver in his stead, and the suit which abated revived in his name as such.

Had the drawees or holders of Colegrove's checks obtained judgment against him, the court might have appointed a receiver of his property under section 13382, 3 Comp. Laws 1915, and such receiver might have been authorized to commence suit against the bank, section 13383, 3 Comp. Laws 1915, but a creditor is not entitled to the aid of equity until he has exhausted his remedies at law. *Jenks* v. *Horton,* 114 Mich. 48; *Ideal Clothing Co.* v. *Hazle,* 126 Mich. 262; *Tyler* v. *Peatt,* 30 Mich. 63. A creditor is not entitled to the aid of a court of equity to attack conveyances or other dealings for fraud until he has become a judgment creditor. *Root* v. *Potter,* 59 Mich. 498; *Trowbridge* v. *Bullard,* 81 Mich. 451; *Nash* v. *Burchard,* 87 Mich. 85; *Eames* v. *Man-*

*ley,* 121 Mich. 300; *Hatch* v. *Daugherty,* 145 Mich. 569; *In re Abbott,* 187 Mich. 229; *Comstock* v. *Horton,* 235 Mich. 282. A receiver is the arm of the court, 34 Cyc. p. 16. His custody is that of the court which appointed him. *People, ex rel. Tremper,* v. *Brooks,* 40 Mich. 333 (29 Am. Rep. 534); *Campau* v. *Detroit Driving Club,* 135 Mich. 575. A receiver may be appointed only in proceedings ancillary to a suit pending. *Merchants and Manufacturers Nat. Bank* v. *Kent Circuit Judge,* 43 Mich. 292; *State, ex rel. Merriam,* v. *Ross,* 122 Mo. 435 (25 S. W. 947, 23 L. R. A. 534); *Barber* v. *International Company of Mexico,* 73 Conn. 587 (48 Atl. 758); *Vila* v. *Grand Island Electric Light, Ice & Cold Storage Co.,* 68 Neb. 222 (94 N. W. 136, 97 N. W. 613, 63 L. R. A. 791, 4 Ann. Cas. 59, 110 Am. St. Rep. 400); *Mann* v. *Investment Co.,* 70 Neb. 454 (97 N. W. 600); *Hottenstein* v. *Conrad,* 9 Kan. 435.

As said in *Jones* v. *Schall,* 45 Mich. 379:

"This appointment of a receiver, even if one could have been appointed at any stage of the case, was absolutely void, as the bill had not been filed and no suit commenced at the time. *Merchants' & Manufacturers' Nat. Bank* v. *Kent Circuit Judge,* 43 Mich. 292."

If there was a special or trust fund the defendant bank had it. Colegrove did not have it. The appointment of a receiver for Colegrove was not warranted. The theory of this case is that the relation of debtor and creditor did not exist between the drawees or holders of Colegrove's checks and Colegrove, but that the defendant bank had obtained the property of the drawees of Colegrove's checks in fraud of their rights, the proceeds of the sale of which property it wrongfully converted to its own use and still retained.

Upon plaintiff's filing the bill of complaint herein, defendant made a motion to dismiss it for the reasons: the court was without jurisdiction; the bill of complaint did not state a cause of action; the plaintiff had no power or authority to act because his appointment as receiver was invalid; the court had no power or authority to appoint plaintiff receiver of the property and effects of Colegrove; plaintiffs had not exhausted their legal remedies; and defendant, a creditor of Colegrove, was not a party to the suit to appoint a receiver. This motion was brought on to be heard and was denied, without costs.

This motion was in the nature of a general demurrer. It attacked the bill as being defective in substance. Story's Equity Pleading, § 455; *Shaw* v. *Chase,* 77 Mich. 436; 21 C. J. p. 439. It challenged the equity of the case madr by the bill and was properly overruled if a case for equitable relief was set out, however imperfectly. *Glidden* v. *Norvell,* 44 Mich. 202. This motion was made under section 12456, 3 Comp. Laws 1915. A demurrer raised only questions of law as to the sufficiency of the bill which arose on the face thereof. 21 C. J. p. 429. It was founded upon some dry point of law which went to the absolute denial of the relief sought. *Verplank* v. *Caines,* 1 Johns. Ch. (N. Y.) 57; *Brien* v. *Buttorff,* 2 Tenn. Ch. 523. It was based exclusively on matters apparent on the face of the bill and the exhibits thereto attached. 21 C. J. p. 432; *George* v. *Rollins,* 176 Mich. 144; *Steele* v. *Culver,* 157 Mich. 344 (23 L. R. A. [N. S.] 564). No appeal was taken or attempted as provided by section 13753, 3 Comp. Laws 1915, from the order overruling the motion to dismiss.

A motion was made to amend the bill by making it more definite and certain. After the order made

thereon had been complied with, defendant filed an answer to the bill of complaint. Generally, an answer constitutes a waiver of demurrer, and, by analogy, in the absence of anything to the contrary, constitutes a waiver of objections taken by motion to dismiss. An objection to the suit for want of jurisdiction of the subject-matter is good at any time. 17 Am. & Eng. Enc. Law (2d Ed.), p. 1046; *Greenvault* v. *Farmers & Mechanics' Bank,* 2 Doug. 498; *Adams* v. *Hubbard,* 30 Mich. 104; *Horton* v. *Howard,* 79 Mich. 642 (19 Am. St. Rep. 198); *Tromble* v. *Hoffman,* 130 Mich. 676. Generally, the defendant may defend only upon the grounds set up in its answer. *Van Dyke* v. *Davis,* 2 Mich. 144; *Smith* v. *Rumsey,* 33 Mich. 183; *Higman* v. *Stewart,* 38 Mich. 513; 21 C. J. p. 471; 1 Daniell's Chancery Practice, 712.

In its answer filed, defendant says:

"Now comes the above named defendant, and now, and at all times hereafter saving and reserving to itself all, and all manner of benefit and advantage of exceptions which can or may be had or taken in the many errors, uncertainties, insufficiencies, inconsistencies and other imperfections in said bill of complaint contained and in answer thereto says:"

This language may not have been sufficient to reserve the benefit of the objections, other than those to the jurisdiction of the court, made by the motion to dismiss. *O'Neill* v. *Cole,* 4 Md. 107; Lube's Equity Pleading (2d Am. Ed.) 363; *Matney* v. *Ratliff,* 96 Va. 231 (31 S. E. 512); *Manning* v. *Merritt,* Clarke's Ch. (N. Y.) 98.

Under the strict rules of practice formerly prevailing, defendant would be entitled to a dismissal of the bill of complaint.

If plaintiff has not a right to maintain this action, it is because there is a nonjoinder of necessary parties. Under section 12362, 3 Comp. Laws 1915, anyone claiming an interest in litigation in a court of chancery may at any time assert his rights by intervention; and section 12364, 3 Comp. Laws 1915, provides:

"No action at law or in equity shall be defeated by the nonjoinder or misjoinder of parties. New parties may be added and parties misjoined may be dropped, by order of the court, at any stage of the cause, as the ends of justice may require."

This suit has been tried. The record is here. Though plaintiff as receiver may not have been a proper party plaintiff, the drawees and holders of Colegrove's checks involved in this suit may be joined as parties plaintiff, and a final decree made disposing of the entire controversy. Such an amendment is warranted not only by the statute above quoted but by the broad construction placed by this court on the general statute of amendments (section 12478, 3 Comp. Laws 1915), in *Peacock* v. *Railroad Co.*, 208 Mich. 403 (8 A. L. R. 964); *Youngs* v. *Advance-Rumely Thresher Co.*, 215 Mich. 682; *People, for use of Herbert*, v. *McKinley*, 220 Mich. 112; *La Plante* v. *DuPont*, 223 Mich. 343 (31 A. L. R. .694); and *Wabash Railway Co.* v. *Marshall*, 224 Mich. 593.

Section 12353, 3 Comp. Laws 1915, provides:

"Every action shall be prosecuted in the name of the real party in interest."

This statute is mandatory. *Marshall & Ilsley Bank* v. *Mooney*, 205 Mich. 513; *Michigan Employers Casualty Co.* v. *Doucette*, 218 Mich. 363; *People, for use of Herbert*, v. *McKinley, supra; Waters* v.

*Schultz,* 233 Mich. 143; *Cox* v. *Railway,* 234 Mich. 597; *Marsh* v. *Barnard,* 236 Mich. 471.

In *Brown* v. *Kalamazoo Circuit Judge,* 75 Mich. 274, 280 (5 L. R. A. 226, 13 Am. St. Rep. 438), it is said:

"When any matter becomes involved in a chancery suit, the necessities of justice and equity require that all persons and all things concerned in the controversy shall be brought before the court to have their respective interests charged or protected, and to end the controversy once for all."

When a court of equity has jurisdiction for any purpose, it will retain it to grant complete relief. *Whipple* v. *Farrar,* 3 Mich. 436 (64 Am. Dec. 99); *Jones* v. *Smith,* 22 Mich. 360; *Miller* v. *Stepper,* 32 Mich. 194; *Rickle* v. *Dow,* 39 Mich. 91; *Chase* v. *Boughton,* 93 Mich. 285; *Brown* v. *Kalamazoo Circuit Judge, supra; Snyder* v. *Snyder,* 131 Mich. 658; *Bennett* v. *Haines,* 225 Mich. 185.

Colegrove had money on deposit in the bank resulting from the proceeds of loans upon his promissory notes given thereto and perhaps resulting from the sale of his own property, the proceeds of which sales were deposited by him in the bank. The general rule is that a deposit in a bank creates the relation of debtor and creditor between the bank and the depositor. *Grammel* v. *Carmer,* 55 Mich. 201 (54 Am. Rep. 363); *City of Lansing* v. *Wood,* 57 Mich. 201; *Brennan* v. *National Bank,* 62 Mich. 343; *Wallace* v. *Stone,* 107 Mich. 190; *Thompson* v. *Riggs,* 5 Wall. (U. S.) 663; *National Bank of the Republic* v. *Millard,* 10 Wall. (U. S.) 152; *Scammon* v. *Kimball,* 92 U. S. 362; *New York County Nat. Bank* v. *Massey,* 192 U. S. 138 (24 Sup. Ct. 199). The bank may set off the credit of the depositor against his indebtedness thereto upon the maturity of such in-

debtedness (*Citizens' Savings Bank* v. *Vaughan,*
115 Mich. 156; 7 C. J. p. 653), or in case of the in-
solvency of the debtor (7 C. J. p. 656). The defend-
ant bank could set off any credit due Colegrove in
which the drawees or holders of his checks were not
interested, except as general creditors, against his
indebtedness thereto.

If one person has obtained the property of an-
other by false representations, unconscionable con-
duct, fraud, or deceit, a court of equity will convert
the fraudulent holder of the property into a trustee
for the use and benefit of the true owner, and pre-
serve the property itself as a fund for the purpose
of restitution to, or recompense of, the true owner
thereof. 1 Perry on Trusts (6th Ed.), § 170. Trust
property or property substituted for it may be re-
covered from the trustee, and all persons having
notice of the trust. If the fund can be distinctly
traced, the court will follow it and fasten the pur-
pose of the trust upon it, unless the rights of inno-
cent third parties have intervened. As against the
trustee, the mingling of trust funds in a private de-
posit will not necessarily prevent their identification.
If equity can follow the fund into the deposit, and it
is still there, that is sufficient. In the absence of
facts showing the contrary, the presumption is that
money drawn out of a mixed deposit by the trustee
for his own use is taken from the portion of the fund
that is his own, whatever the relative dates of the
deposits. The better opinion is that, even as to
creditors, the mixing of trust funds with private
funds in a general deposit does not obliterate the
trust. *Carley* v. *Graves,* 85 Mich. 483 (24 Am. St.
Rep. 99); *Cavin* v. *Gleason,* 105 N. Y. 262; *Board of
Fire & Water Com'rs of Marquette* v. *Wilkinson,*

119 Mich. 655 (44 L. R. A. 493) ; 2 Perry on Trusts (6th Ed.), § 828.

As stated in *Fowler* v. *McQuigg*, 222 Mich. 178:

"A person who knowingly receives the money or property of a principal from an agent in payment of the latter's debt does so at his peril. 21 R. C. L. p. 913. This rule has been followed in Michigan whenever the question has arisen. *Hurley* v. *Watson*, 68 Mich. 531; *Cowan* v. *Sargent Manfg. Co.*, 141 Mich. 87."

Where a commission merchant is known by a bank to be engaged in that business and his deposits in the bank are known by it to be the proceeds of the sales of the property of those who have consigned the same to him for sale, that is notice to the bank of the ownership of the deposit arising from depositing the proceeds of such sales, and the bank has no right to set off the principal's credit in its bank against the agent's indebtedness. If it does so, a constructive trust arises in favor of the true owners of the deposit and they may follow it in the hands of the bank and impress a trust upon it in their own favor and recover it from the bank. *Burtnett* v. *National Bank*, 38 Mich. 630; *Sherwood* v. *Savings Bank*, 103 Mich. 109; *Patek* v. *Patek*, 166 Mich. 446 (35 L. R. A. [N. S.] 461) ; *Union Stock Yards Bank* v. *Gillespie*, 137 U. S. 411 (11 Sup. Ct. 118) ; *Cable* v. *Savings Bank*, 197 Iowa, 393 (194 N. W. 957, 197 N. W. 434, 31 A. L. R. 748) ; *Covey* v. *Cannon*, 104 Ark. 550 (149 S. W. 514) ; *Cady* v. *National Bank*, 46 Neb. 756 (65 N. W. 906, 68 N. W. 358) ; *Shotwell* v. *Savings Bank*, 34 S. D. 109 (147 N. W. 288). This rule is applicable to the proceeds of the sale of stock shipped by Colegrove co-operatively.

When credit is extended by a bank to a livestock dealer to enable him to purchase stock and pay therefor by issuing and delivering his checks upon the bank to the owners thereof, the bank has no right to set off the proceeds of the sale of such livestock against other independent indebtedness of the dealer to the bank. If it does so with knowledge that the dealer's checks have been issued and delivered in payment thereof, it will be held to be a trustee for the payment of the dealer's checks so issued, and suit may be maintained against the bank by the drawees of such stock buyer's checks, not upon the checks themselves, but to compel the bank to account for the proceeds of the property of the drawees which has been diverted by it from the purposes for which it was deposited and converted to its own use and benefit. The right of the drawees of Colegrove's checks, who sold their livestock in this case to Colegrove, against the bank, does not depend upon the checks issued in payment therefor. A check of itself does not operate as an assignment of any part of the funds of the drawer in the bank to the credit of the drawee. The bank is not liable to the holder of a check thereon ordinarily unless and until it accepts or certifies the check. Section 6230, 2 Comp. Laws 1915. The defendant bank is liable for the proceeds of the sale of the last shipment of livestock purchased by Colegrove because it promised to honor Colegrove's checks issued in payment therefor and thereby induced him to purchase the livestock and issue the checks given by him, and by so doing and then repudiating its promise to honor his checks and setting off his deposit of the proceeds of the sale of such livestock against his indebtedness to the bank, it sought to acquire the proceeds of the two shipments of livestock in ques-

tion and shift the loss resulting from Colegrove's prior bad debts upon the drawees of such checks. This it cannot do. Not because of the checks themselves, but because it would be unconscionable and a fraud upon the drawees of such checks. The rights of the drawees of Colegrove's checks and the liability of the bank would not be different if no checks had been actually given, if the bank had promised Colegrove to pay the owners of the livestock purchased and. shipped by him the purchase price thereof, if he had communicated the bank's promise to the owners of such livestock and thus induced them to deliver it to him in reliance upon receiving their pay from the bank when the livestock was shipped and sold and the proceeds of the sale remitted to the bank. The liability of the bank does not depend upon the negotiable instruments issued, but upon the bank's false and fraudulent promise and repudiation of its promise to Colegrove inducing him to purchase the livestock from the drawees of such checks, to issue his checks and deliver the same in payment therefor, ship the livestock and sell the same, collect the proceeds of such sale and deliver the proceeds of the sale of the stock to the bank and the confiscation of the proceeds of such shipments, and the set off of the same by the bank to the payment of Colegrove's prior indebtedness and to the exclusion of the payment of his outstanding checks, the giving of which it has induced. *First Nat. Bank of Hazard* v. *Barger* (Ky.), 115 S. W. 726; *Fall City State Bank* v. *Wehrli,* 68 Neb. 75 (93 N. W. 994); *Paige* v. *National Bank,* 12 Ohio App. 196; *Hitt Fireworks Co.* v. *Scandinavian-American Bank,* 114 Wash. 167 (195 Pac. 13, 629); *Southern Exchange Bank* v. *Pope,* 152 Ga. 162 (108 S. E. 551); *Goeken* v. *Bank of Palmer,* 104 Kan. 370 (179 Pac.

321); *York* v. *Farmers Bank,* 105 Mo. App. 127 (79 S. W. 968); *Pile* v. *Bank of Flemington,* 187 Mo. App. 61 (173 S. W. 50); *Morton* v. *Woolery,* 48 N. D. 1132 (189 N. W. 232, 24 A. L. R. 1107); *Johnson-Brinkman Commission Co.* v. *Central Bank,* 116 Mo. 558 (22 S. W. 813, 38 Am. St. Rep. 615); *Ballard* v. *National Bank,* 91 Kan. 91 (136 Pac. 635); *People's Nat. Bank* v. *Swift,* 134 Tenn. 175 (183 S. W. 725); *Payne Bros.* v. *Burnett,* 151 Tenn. 496 (269 S. W. 27, 39 A. L. R. 1125); *Dolph* v. *Cross,* 153 Iowa, 289 (133 N. W. 669).

The decree herein will be modified in accordance with this opinion and a decree entered making Colegrove and the drawees and/or holders of his outstanding unpaid checks for livestock, parties hereto, dropping the receiver as a party plaintiff, and if the parties cannot agree upon the settlement of the decree herein upon the rights and liabilities of the respective parties, the decree may provide for remanding the cause to the trial court for further proceedings in accordance herewith.

NORTH, C. J., and FEAD and SHARPE, JJ., concurred with POTTER, J.

WIEST, J. (*concurring*). I concur in the result. The fund arising from the livestock purchases and sales was special, and, under the agreement between the bank and Colegrove, was impressed with a trust, of which the holders of Colegrove's checks were the beneficiaries, and could not be applied by the bank upon Colegrove's old indebtedness.

I think the amendment mentioned by Mr. Justice POTTER allowable.

CLARK, McDONALD, and SHARPE, JJ., concurred with WIEST, J.