## J. N. HARRISON v. WM. A. SIMPSON, *et al.*

PAROL CONTRACT; *Verbal Promise to one Party, for Benefit of Another.* C. bought of H. a lot of cattle, made a partial payment, and agreed to pay the balance on taking the cattle, and to take the cattle between two given dates. When the time came for taking the cattle, C. went to the bank of S. & Co., informed them of all the facts, gave them a draft upon certain parties to whom he intended shipping the cattle, and received a parol promise to collect the draft, and out of the proceeds pay the check which he should draw on the bank and give to H. as final payment. C. then went to H., told him of the promise of the bank, gave his check thereon, and on the faith thereof H. delivered to him the cattle. The bank collected the draft, but refused to pay the check. C. is insolvent. *Held,* That H. was entitled to avail himself of the parol promise made to C., and could recover of the bank the amount of the check.

*Error from Franklin District Court.*

ACTION brought by *Harrison,* against *Wm. A. Simpson* and *J. J. Crippen,* partners as "Simpson Bank," and *Wm. J. Cummings,* to recover $2,450, and interest. Trial, at March Term 1875. General verdict in favor of plaintiff, and against *Simpson* and *Crippen,* for $2,577.60. The jury also returned answers upon particular questions of fact, which questions and answers are quoted in the opinion, *infra.* On motion of defendants, the court gave judgment in favor of defendants, and against the plaintiff, *non obstante,* dismissing the plaintiff's petition, with costs. From this ruling and judgment *Harrison* appeals, and brings the record here on error for review.

*J. W. Deford,* and *A. Franklin,* for plaintiff.

*Nevison & Alford,* and *Benson & Parkinson,* for defendants.

The opinion of the court was delivered by

BREWER, J.: On the trial in the court below the jury returned a general verdict for plaintiff, but at the same time returned answers to special questions. Both parties moved

for judgment, and the court sustained the motion of defendants. No motions were made by either side to set aside the verdict, or for a new trial; so that though a bill of exceptions preserves the testimony, our inquiry is limited to the pleadings, the verdict, and the answers. The petition alleges that in March 1874 the defendant W. J. Cummings purchased of plaintiff thirty-eight head of cattle for $2,850, payable $400 cash in hand, as earnest-money, and the balance when the cattle should be taken, which was to be between June 25th and August 25th; that Cummings drew his draft for said $400 upon the other defendants, doing business as bankers under the firm-name of Simpson Bank, and to induce plaintiff to take the same stated that while insolvent himself he had made arrangements with Simpson Bank whereby said draft would be promptly paid, as well as any checks he might thereafter draw; that relying thereon plaintiff received said draft, and that said draft was duly paid by Simpson Bank with full knowledge of all these statements and matters. The petition then proceeds as follows:

"Afterward, on the 25th of June 1874, the said William J. Cummings, desiring to take possession of the said thirty-eight head of cattle and to ship them, (together with about sixty-four other head of cattle, before that time sold to said Cummings by one McLane,) to the firm of Rhea, Moody & Co., as consignees, at St. Louis, Missouri, called at the banking-house of said firm, Simpson Bank, in Lawrence, and notified said bank of his desire to obtain possession of said cattle, and to ship them to Rhea, Moody & Co. as aforesaid, and then and there drew and delivered his draft for $7,280, in favor of said Simpson Bank, on Rhea, Moody & Co., against said proposed consignment of sixty-four head and thirty-eight head of cattle, so as aforesaid bought of plaintiff and of said McLane; and said Cummings then and there, and before delivering said draft for $7,280 to Simpson Bank, further notified said bank that he was by contract bound, and intended, on obtaining possession of said cattle, to give to said McLane a check on said Simpson Bank for about $4,525, and to this plaintiff a check on them also for about $2,450, the balances of the purchase-money due and owing to the said McLane and this plaintiff, respectively, for said cattle;

and said Simpson Bank then and there expressly promised and agreed to and with said Cummings, to collect said draft for $7,280, and out of the proceeds thereof, to pay said checks, and each of them, promptly on presentment therefor, and thereupon, on that condition, for that consideration and purpose, and with that understanding and none other, the said Cummings then and there delivered said draft for $7,280 to Simpson Bank, and it was by them presented to Rhea, Moody & Co., the drawees therein named, for payment, and was by them duly paid to Simpson Bank, on or about the 1st of July 1874, as said bank then well knew. Afterward, on the 26th of June 1874, said Cummings called upon this plaintiff, at said Franklin county, and then and there stated to him all and singular the facts above set forth, and particularly repeated to him the promise so as aforesaid made by said Simpson Bank to pay the check for about $2,450, to be given by said Cummings to the plaintiff, on taking possession of said thirty-eight head of cattle, in consideration of the delivery to them of said draft for $7,280, as hereinbefore alleged; and said Simpson Bank, then and there itself likewise expressly promised this plaintiff, if he would deliver said thirty-eight head of cattle to said Cummings, to pay said check so to be given as aforesaid for the balance of the purchase-money thereof, to-wit, about $2,450; and this plaintiff, relying upon and induced by the said statements and promise of said Cummings and said Simpson Bank, then and there delivered to said Cummings the thirty-eight head of cattle, receiving from him in exchange therefor a check for $2,450 on Simpson Bank."

The petition then gives a copy of the check, dated June 29th, alleges that it was duly presented on July 3d, and payment refused; that it is still unpaid; that Simpson Bank had received the amount of draft on Rhea, Moody & Co. in full before check was presented, and had the same when they so refused payment, and that Cummings was and is wholly insolvent. The bank filed a general denial, and upon these pleadings the trial was had.

The first question presented was this, " Had said defendant, the Simpson Bank, previous to the delivery of the check for $2,450 in plaintiff's petition described, promised to pay *the checks of Cummings generally ?*" The answer was, " Not gen-

erally, but did agree to pay Harrison's check." The next seven questions and answers cut no figure in the case, and need not be quoted. The remaining questions and answers are as follows:

*9th.*—Did Simpson Bank promise to pay the check for $2,450, in plaintiff's petition described, at the time defendant Cummings drew his draft for $7,280 on Rhea, Moody & Co. of St. Louis? *Ans.*—Yes.

*10th.*—If there was such a promise, what officer of the bank made it? *Ans.*—The president.

*11th.*—If there was such a promise, to whom was the promise made? *Ans.*—To Cummings, and by Cummings communicated to Harrison.

*12th.*—If there was such a promise, where was it made? *Ans.*—In Simpson Bank.

*13th.*—If there was any promise, was there any consideration therefor? *Ans.*—There was.

*14th.*—If there was such a promise and a consideration therefor, what was the consideration? *Ans.*—Draft on St. Louis for $7,280.

*15th.*—If there was such a promise and a consideration therefor, who paid the consideration? *Ans.*—Cummings.

*16th.*—If there was any consideration paid, when was it paid? *Ans.*—At the time draft on St. Louis was delivered to Simpson Bank.

*17th.*—If there was any such promise made, was such promise in writing? *Ans.*—No.

*18th.*—If there was such promise in writing, what was the writing? *Ans.*—Answered by No. 17.

*19th.*—Did the defendant Simpson Bank, after Cummings gave the check in plaintiff's petition described, promise to pay the said check? *Ans.*—Yes.

*20th.*—If such promise was made, was it in writing? *Ans.*—No.

*21st.*—And if in writing, what was the writing? *Ans.*—Answered by No. 20.

*22d.*—If there was such a promise, was there a consideration therefor? *Ans.*—Yes.

*23d.*—If there was such promise, what officer of the bank made the promise? *Ans.*—President.

*24th.*—If there was such promise, when was it made and to whom? *Ans.*—To Harrison, on the 4th of July, and to Cum-

mings and Harrison on 6th July, and also on 25th of June to Cummings.

*25th.*–At the time the check for $2,450 was presented to Simpson Bank for payment, had Cummings, the maker of the check, funds enough in Simpson Bank to pay that check? *Ans.*–Don't know.

*26th.*–Had Simpson Bank funds enough of defendant Cummings to pay said check at any time after the same was presented for payment? *Ans.*–Don't know.

*27th.*–Did Simpson Bank at any time accept the check in plaintiff's petition described, in writing? *Ans.*–No.

*28th.*–If the Bank did so accept said check, when was it accepted? *Ans.*–Answered in No. 27.

The question, as it seems to us, presented by the record is, Can the payee of a check recover of the bank upon which it is drawn, upon a parol promise made by the bank to the drawer before it is drawn that it will pay such check, which check is to be and is given to the payee for a debt due from the drawer to him at the time of the promise, of which fact the bank had full knowledge, and which promise is communicated to the payee at the time the check is received by him, and upon the faith of which promise and check the payee at the time parts with value? As it appears from the 25th and 26th questions, that the plaintiff failed to show that the drawer had funds in the bank to meet it, his check cannot be considered, as it is in some cases, as an equitable assignment of funds, and an action maintained upon such a theory. Neither was there any acceptance of the check when presented, nor any promise in writing to pay or accept it. Indeed, it is plain that no action can be maintained upon the check upon any recognized theory concerning mercantile paper. But while no action can be maintained upon the check, we think, upon the facts as found, Harrison was entitled to recover. The only promise made by the bank was a promise to Cummings, but it was a promise upon a valuable consideration to pay Cummings' debt to Harrison. And as already decided by this court in *Anthony v. Herman*, 14 Kas. 494, "An action can be maintained upon a promise made by a defendant, upon valid consideration, to a third party for the benefit of the plaintiff,

although the plaintiff was not privy to the consideration."
Harrison, it is true, was not privy to the consideration given
by Cummings to the bank; but Cummings was indebted to
Harrison, and he gave to the bank valuable consideration, for
which it promised to pay his debt.   Harrison is entitled to
avail himself of this promise.   It will be borne in mind that
Cummings, at the time of this promise of the bank, was
already indebted to Harrison, the purchase of the cattle hav-
ing been made some months before, and that the bank was
fully aware of the circumstances of the purchase and the
existence of the debt, so that the promise of the bank is fairly
to be deemed as a promise to pay that debt, the check being
only the means of evidencing and accomplishing the pay-
ment.   There is a difference, it is true, between the case of
*Anthony v. Herman*, and this, but the difference is in favor of
this.   There, Anthony parted with nothing, and he was held
entitled to avail himself of a transaction entirely between
third parties.   Here, Harrison parted with value, which will
be entirely lost to him if the bank is permitted to break its
promise.   Again, the petition alleges that the bank itself
promised Harrison to pay the check if he would deliver the
cattle, and that upon the faith thereof he delivered the cattle.
The general verdict would be equivalent to a finding that this
was so.   The answers to the special questions do not abso-
lutely negative this finding.   But we are not inclined to place
any stress on this, for the testimony, though not properly
before us for consideration, discloses the fact that no such
direct promise was made.

For the reasons first given the judgment of the district
court will be reversed, and the case remanded with instruc-
tions to enter judgment in favor of the plaintiff on the gen-
eral verdict.

VALENTINE, J., concurring.

HORTON, C. J., not sitting in the case.