## FALLS CITY STATE BANK v. JOHN WEHRLI.

FILED MARCH 4, 1903.  No. 12,712.

1. **Check: PAYEE: RIGHT OF ACTION: DRAWEE: FUNDS.** The payee of a check has a right of action against the drawee if the latter has funds to meet it when it is presented.

2. **Evidence: AGREEMENT: HONOR OF CHECKS.** Evidence *held* sufficient to sustain a finding that there was an agreement by the bank to honor checks to be given in payment for a car-load of horses by the drawers.

3. ———: ———: ———. **LIABILITY OF BANK.** An agreement to honor checks for a car-load of horses, the drawee bank to be secured by a draft and bill of lading on their shipment, *held* valid, and the bank liable for the payment of the checks, it having sufficient funds for such purpose derived from the draft.

4. **Objection: OTHER LIABILITY.** It is no objection to such an agree-ment that the drawers were already indebted to the bank on other transactions.

ERROR to the district court for Richardson county: CHARLES B. LETTON, DISTRICT JUDGE.  *Affirmed.*

*Isham Reavis* and *Frank Reavis,* for plaintiff in error.

*Francis Martin, John Kennish* and *Arthur J. Weaver,* contra.

HASTINGS, C.

The first error complained of in this case is that the bill of particulars, originally filed in justice court,. and on which, by agreement, the case was subsequently tried on appeal in the district court, does not state a cause of action. The petition alleges that the defendant bank is a corporation; that on May 16, 1901, the plaintiff, Wehrli, sold to M. A. and Jacob Miller, doing business in the name of M. A. Miller, a horse for $78; that the Millers shipped the horse to St. Louis, and deposited with defendant for plaintiff's use $78 as the proceeds of the sale, and that the defendant bank agreed to pay plaintiff the amount on Miller's order; that the Millers, father and son, gave their check in the name of M. A. Miller in plaintiff's favor for the amount; that it was presented, and payment by defendant refused; that the defendant holds the said sum of $78, the proceeds of said sale of plaintiff's horse so deposited by the Millers, for plaintiff's use and benefit, and is indebted to the plaintiff in the sum of $78 and interest, and $3 protest fees upon the check.

Defendant admitted its incorporation, and denied the other allegations of the bill of particulars. It. claims that there is no privity of contract between plaintiff and defendant, and no cause of action is alleged for that reason. We are unable to hold to this contention. It is well settled in this state that the payee of a check has a right of action against the drawee for the amount if the money is still there. *Fonner v. Smith,* 31 Neb. 107, 11 L. R. A. 528, 28 Am. St. Rep. 510; *Union P. R. Co. v. Metcalf,* 50 Neb. 452, 461; *Columbia Nat. Bank of Lincoln v. German Nat. Bank of Lincoln,* 56 Neb. 803, 807. There seem to be facts enough alleged to justify the bringing of an action by the payee of this check. He alleges that the money, expressly deposited to pay it, is still in the bank.

It is next claimed that the allegations and proof do not agree. The basis of this claim is the fact that among the allegations of the bill of particulars is that the horse was

sold in St. Louis, and the proceeds of the sale, in the sum of $78, deposited with the defendant. The evidence discloses that the horse was bought May 16, $2 paid in money and $78 by the check on the bank dated ·May 18, and the horse had been shipped nowhere. The check designated no particular fund out of which it was to be paid. It is urged—and this is probably the real question in the case—that the evidence does not disclose any agreement on the part of the bank to pay this check out of the proceeds of the sale of this horse or any other horse. Stress is laid by counsel on the proposition that the name of the plaintiff, Wehrli, was never mentioned between the Millers and the bank in their negotiations with regard to the shipment of these horses. This seems to be true, but there clearly was an understanding between the Millers and the cashier of the bank, Greenwald, that they might check on the bank in payment for a car-load of horses and turn in a draft and bill of lading of the horses in settlement for the checks.

The horses were bought and the Millers drew checks on the defendant bank to the amount of $2,175.50. When shipment was made a draft for $2,200 and the bill·of lading were turned over to the bank. The bank had paid only a small number of the checks. As soon as it was informed that the $2,200 draft had been paid it refused to cash any more checks and applied the remaining proceeds of the draft to the payment of some claims it held against the Millers. At the time the $2,200 draft was drawn the amount of the outstanding checks drawn in purchase of the car-load of horses was computed, and a statement, the correctness of which is not disputed, was given by the Millers to the cashier of the bank, Greenwald. The bank claims that the Millers' account, before anything was checked for this car-load of horses, was overdrawn about $3,000. It is claimed that any arrangement to permit their checking would be an agreement by the cashier to allow an overdraft on the bank, and could not be upheld. It is urged that the cashier had no authority to make any such agreement that the Millers might draw on the bank

without funds, and that whatever arrangements were made were void.

It is also urged that even if the agreement to honor these checks for horses· was made by the cashier, Greenwald, it did not give to the payee a right to bring an independent action for the payment of the check; that at the most the proceeds of the horses purchased in this manner would be only a trust fund for the payment of all the checks issued for horses on the strength of such agreement; and that the money could only be reached by a suit in equity brought by some beneficiary of the trust to vindicate his own right and that of all the rest.

In fact, the defenses in this case are, in the first place, that the cashier of the bank never entered into such an arrangement as is claimed; that the arrangement, if there was one, was not expressly for the benefit of the plaintiff Wehrli; that the arrangement, if made, was void because providing for an overdraft and therefore beyond the cashier's authority; and, finally, that the arrangements in no event carried the right to sue at law in a justice court, but only gave a right in equity to the owners of the horses.

This first claim of the defendant bank was found against it by the trial court, and we see no occasion for disturbing its finding. There was certainly an arrangement between the bank's cashier and the Millers that they might buy a car-load of horses, pay for them by checks on the bank, and settle for these checks by turning in a bill of lading and draft for the proceeds of the horses when sold in the market.

As to the second point, whatever might be the rule of law as to a simple agreement to permit a party to overdraw his account, it seems clear that it was competent for the cashier to agree to advance money to the Millers to pay for a car-load of horses under an arrangement for securing the bank by draft for the proceeds accompanied by the bill of lading. At all events, such transactions are made daily, and the fact that the Millers were already overdrawn at the bank, as a result of previous dealings, would not affect the right to maintain this action.

The third point, that there was no right to sue at law, can not be sustained if the agreement that the Millers might check out for these horses is upheld. The cases before cited amply uphold the doctrine that in the state of Nebraska the payee of a check has a legal action against the drawee as long as the latter has funds subject to the check.

In our view of the case, the agreement that the Millers might check, was equivalent to putting the amount of money necessary to purchase this car-load of horses to their credit for that purpose, and until it was drawn out for that purpose, or the horses otherwise paid for, it would be there. There is no claim that the money has been drawn out for this purpose or for any other, nor that there is any uncertainty as to the amount of the outstanding checks given for horses, or as to the persons to whom they are payable. The bank, after making the arrangement and getting the $2,200 draft, applied its proceeds, so far as they were not already paid upon checks, to the satisfaction of its own previously existing claim. If it be granted, as we think it must, that the finding as to an agreement to honor this check and to have as a fund for its ultimate payment the $2,200 draft, should be upheld, then the judgment of the district court is right.

KIRKPATRICK and LOBINGIER, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.