'WEBSTER et al, Appellants, v. FIRST STATE BANK OF PEEVER et al, Respondents.

(193 N. W. 675.)

File No. 5167.    Opinion filed May 17, 1923.)

**Appeal and Error—Evidence—Banks and Banking—Exclusion in Action on Check Issued by Bank, of Evidence of Arrangement Whereby Bank Should Pay for Cattle Purchased by Buyer, Held Error and Prejudicial.**

In action against a bank on an unpaid check given to plaintiffs by defendant bank at the direction of a stock buyer to whom cattle had been sold, it was prejudicial error to sustain objection to evidence of an arrangement between the cattle buyer and the bank, whereby it was agreed that the buyer should purchase cattle, and that the bank should draw a sight draft on shipments, and that the same should be deposited to the account of the buyer, and all checks given for purchase of cattle should be honored and taken care of by the bank, and that pursuant to such agreement the buyer purchased plaintiff's cattle.

Appeal from Circuit Court, Roberts County; Hon. B. A. WALTON, Judge.

Action by John Webster and another against the First State Bank of Peever and another. From judgment for defendants and an order denying a motion for new trial, plaintiffs appeal. Reversed and remanded.

*D. J. Leary,* of Browns Valley, Minn., and *Jorgenson & Anderberg,* of Sisseton, for Appellants.

*Howard Babcock,* of Sisseton, for Respondents.

Appellant cited: State Bank of Lemmon v. Stockman's State Bank of Faith (S. D.), 176 N. W. 646; Dolph v. Corss (Ia.), 133 N. W. 669; Ballard v. Home National Bank of Kansas, 136 Pac. 936 and note L. R. A. 1916C, 164; Saylors v. State Bank of Allen, 163 Pac. 454; Goeken v. Bank of Palmer, 179 Pac. 321.

ANDERSON, P. J. This is an appeal from a judgment for defendant bank and an order denying appellants' motion for new trial. The action is brought to recover $514.65, being the purchase price of a bunch of cattle sold by appellants to respondent, Frank Douglas. On October 7, 1920, and for some time prior thereto, Douglas had been engaged in buying live stock in the vicinity of Peever, this state. On said October 7th appellants sold and delivered at Peever to said Douglas a number of cattle

for consideration aforesaid. After cattle had been weighed Douglas gave appellants a statement of the weights and instructed them to take same to respondent bank and get the money. Appellants went to the bank and presented said book to one Norberg, assistant cashier of the bank, and Norberg made out a check, which is known herein as Exhibit 55, signed the name of Douglas to it, and put his initials under the name. Appellants asked Norberg if this check could be cashed at the First National Bank of Wilmot, and the cashier replied that it could be cashed anywhere and that it would be paid when it came back. At the time this check was made by Norberg and delivered the cattle had not been shipped from Peever. The cattle in payment of which the check was made were shipped, and the proceeds thereof came back to defendant bank. After the cattle had been shipped and proceeds received by the bank, it refused payment on said check, giving as its reasons that Douglas had no money in the bank with which to pay the same.

It appears that a large number of checks had been paid out of the account of Douglas between the time of the making of the check and the presentation of it for payment. It appears that nearly all checks drawn on the Douglas account were drawn by the cashier of the bank, and that very few checks were ever drawn against the account by Douglas, and that the cashier, Hodgson, had full charge and control of the Douglas account. At the time the cattle were delivered, Norberg knew that Exhibit 55 was given as purchase price of these cattle, and that appellants at the time of delivering the cattle and receiving Exhibit 55 relied upon the statement made by assistant cashier to the effect that the check was good and would be paid when presented. From the record it appears that the transaction in question occurred on October 7, 1920. It also appears that, when appellants came to the bank for the purpose of receiving the proceeds of the sale, they were asked by the cashier or assistant cashier as to whether they "wanted a check or the money"; that appellants' reply was to the effect that they would prefer a check. From that time and up to and including the 30th day of October of the same year appellants did not present their check to be cashed. It is claimed that when appellants did so bring the check to defendant bank to be cashed there were no funds in Douglas' account with which to pay it,

and they were so advised by the personnel of the bank; that at the time the cattle were delivered the assistant cashier of defendant bank, who wrote out Exhibit 55, knew that the same was given for the purchase price of the Webster cattle, and that plaintiffs at the time of delivering the same and receiving the check relied upon the statement made by the assistant cashier to the effect that said check was good and would be paid when presented. It appears that the proceeds of the Webster cattle were received by the bank.

The plaintiffs in their complaint allege that for months prior to October 7, 1920, and for some time thereafter, there existed between defendant bank and Douglas an arrangement and agreement whereby Douglas should purchase cattle and hogs from farmers in the vicinity of Peever for delivery at said point; that defendant bank should furnish the necessary money to pay therefor, and that such live stock were to be shipped to South St. Paul or other cattle and hog markets consigned to commission firms located at such markets and doing a regular business of selling cattle and hogs on commission; that it was customary when consigning stock to commission firms to draw sight draft on such firm for the major portion of the value of such stock and hogs, and the proceeds of such draft be deposited in the bank of the purchaser from the farmers; that cattle delivered by plaintiffs as hereinbefore stated were so handled by defendant bank and such commission firms, and that defendant bank has received the entire proceeds from the sale of the cattle so delivered by plaintiffs, and that plaintiffs have never received pay for any of such live stock. Pursuant to such pleadings plaintiffs offered to prove by the witness Frank Douglas, one of the defendants, that prior to the time he purchased the cattle of plaintiffs herein involved there was an arrangement and agreement existing by the cashier, Hodgson, of defendant bank, whereby it was agreed that defendant Douglas should purchase cattle; that the bank should draw a sight draft on shipments, and that the same should be deposited to the account of Douglas, and all checks given by Douglas for purchase of cattle should be honored and taken care of by the bank, and pursuant to such agreement Douglas purchased a number of cattle, including those of plaintiffs; that the proceeds of the cattle so purchased were all deposited in defendant bank of which said

Hodgson was the cashier.  This offer was objected to by defend-
ants as incompetent, without foundation, being a conclusion of
the witness and not binding on the defendants, and that any such
agreement, if made, would be contrary to law, without authority,
and that the bank had no authority to pledge the bank in such
speculative enterprise.  This objection was sustained.  Goeken v.
Bank, 100 Kan. 177, 163 Pac. 636.  This is a case practically on
all fours with the case at bar.  In this case one Schuette agreed
with defendant bank that he was to purchase live stock, giving his
checks on the bank to the sellers from whom he might purchase,
depositing the proceeds of the sale in the bank, and that out of
the funds so derived the bank would pay the checks and expenses
incidental to the transaction.  In this case (104 Kan. 370, 179
Pac. 321) it was decided:

" 'When Schuette sold the plaintiff's hogs, for which he had
given only an unprotected check, the money which he received
really belonged to the plaintiff and was subject to be claimed by
him.  And his right was not lost by the deposit of the money with
the bank which knew of its origin and was co-operating with
Schuette.  The rules that a bank is not bound by its oral accept-
ance of a check, and that it is not liable to the payee of an unac-
cepted check, have no application to this situation.' * * * On
the last trial the jury found * * * that the alleged contract·
between the bank and Schuette had been made; that it did not
appear from the evidence that there was any lack of funds in the
bank to the credit of Schuette with which to pay the check when
it was presented.  It was also found that Schuette had never ex-
pressly directed the bank to set apart" the money "to be used in
payment of this particular check. * * * The first contention
is that the court erred in refusing to instruct the jury to return a
verdict for defendant.  In view of the testimony showing the
existence of the alleged agreement and that in pursuance of it the
live stock was sold to Schuette, who gave the plaintiff a check
therefor, and * * * upon a resale of the stock, the proceeds,
which exceeded the amount of the check and incidental expenses,
were deposited in the bank, and * * * that the bank refused
to pay the check when * * * presented.  A directed verdict"
for "defendant was not warranted.  The facts of the case brought
it fairly within the rules laid down in previous decisions."

See Ballard v. Bank, 91 Kan. 97, 136 Pac. 935, L. R. A. 1910C, 161; Saylors v. Bank, 99 Kan. 515, 163 Pac. 454.

The court then goes on and states:

"Although plaintiff was not a party to the agreement between Schuette and the bank, it was made in part for his benefit and he was entitled to avail himself of the promise of the bank, although he may not have known that it was made."

See Harrison v. Simpson, 17 Kan. 508; Railway Co. v. Hopkins, 18 Kan. 494; Griffith v. Stucker, 91 Kan. 47, 136 Pac. 937. In this Harrison Case, as in the instant case, the question was raised that there were no funds in the bank to meet the demands of plaintiffs. The purchase of the hogs by Schuette was conceded; also that they were sent to the general market, sold as the agreement contemplated, and the proceeds of the sale, were ample to pay the purchase price of the hogs, were received by the bank. Plaintiff by proof traced the funds derived from the sale of the hogs into the bank and it then devolved upon defendant bank to show that there were no funds in the bank with which to pay the check given for the hogs pursuant to the agreement. This, according to the findings of the jury, the bank failed to do. Thus it failed to maintain the burden of proof on that phase of the case and hence defense of the bank fails. Leach v. Hill, 106 Iowa 171, 76 N. W. 667; Falls City State Bank v. Wehrli, 68 Neb. 75, 93 N. W. 994.

In this case the evidence clearly shows that the moneys, the proceeds from the sale of the stock, all found its way into the defendant bank. The burden was therefore upon the defendant bank to, by competent evidence, affirmatively show that there was no money in the bank available for the purpose of paying for the stock. The action of the trial court in sustaining the objection to the offer to prove was clearly an invasion of plaintiffs' rights, and such action on the part of the court was prejudicial error. The court's action in directing a verdict for defendant bank was also prejudicial to the rights of the plaintiff.

The judgment and the order denying plaintiffs' motion for a new trial are reversed, and cause remanded for further proceedings consistent with the views as expressed in this opinion.

Note—Reported in 193 N. W. 675. See, Headnote (1), American Key-Numbered Digest, Appeal and error, Key-No. 1056(1), 4 C. J. Sec. 2986.