WEBSTER et al, Respondents, v. FIRST STATE BANK OF PEEVER et al, Appellants.

(208 N. W. 774.)

(File No. 5832.    Opinion filed May 5, 1926.)

**1.  Banks and Banking—Jury.**

Whether bank undertook to finance cattle buyer **held** for jury, where stock was often billed in name of bank's cashier, and its officer drew check on buyer's overdrawn account to pay for cattle.

**2.  Appeal and Error.**

Decision in previous appeal of case is law of the case and not to be questioned on subsequent appeal.

Note.—See, Headnote (1), American Key-Numbered Digest, Banks and banking, Key-No. 155, 7 C. J. 570; (2) Appeal and error, Key-No. 1097(1), 4 C. J. Sec. 3075.

Appeal from Circuit Court, Roberts County; Hon. J. J. BATTERTON, Judge.

Action by John Webster and another against the First State Bank of Peever and others. From the judgment for plaintiffs, and an order denying a new trial, defendants appeal. Affirmed.

*Babcock & Babcock,* of Sisseton, and *Roy E. Willy,* of Platte, for Appellants.

*Jorgenson & Anderberg,* of Sisseton, and *D. J. Leary,* of Browns Valley, Minn., for Respondents.

BURCH, C.  This action is brought to recover the sum of $514.65, the amount of a check drawn upon the defendant bank, against the account of Frank Douglas. The case was submitted to a jury. Verdict was in favor of plaintiffs, upon which judgment was rendered, and this appeal is from the judgment and an order denying a new trial. The questions on appeal relate to the liability of the bank to the holders of the check, without regard to Douglas' liability as a defendant. The facts admitted or supported by sufficient evidence are as follows: The check was given for the purchase price of cattle sold by respondents and delivered to Douglas, at Peever, on October 7, 1920. After the cattle were weighed, Douglas gave respondents a statement of the weights and told them to take it to the bank and get their money.

Respondents went to the bank, presented the statement of weights, and the assistant cashier, Norberg, made out a check for $514.65, the amount due as the purchase price, signed Douglas' name to it, put his initials under the name, and handed the check to one of the respondents. Respondents were doing their banking business with the First National Bank of Wilmot, and asked Norberg if the check could be cashed at that bank, to which Norberg replied that it could be cashed anywhere, and that it would be paid when it came back. Upon this assurance respondents accepted the check, the cattle were shipped, and the proceeds later remitted to the bank. On the 13th of October the check was deposited at the First National Bank of Wilmot, but when later presented to appellant payment was refused, on the ground that there were no funds in Douglas' account to pay it. The case was tried twice.

On the first trial respondents offered to prove by Douglas that an agreement existed between Douglas and the bank, whereby Douglas would purchase cattle and hogs from farmers in the vicinity for delivery at Peever, and the bank would furnish the necessary money to pay therefor, and such live stock would be shipped to market consigned to a commission firm, with a sight draft drawn for a major portion of the value of such stock, which would pass through the bank in regular channels, so that the proceeds of the draft should come to, or be credited to, the bank, and that the purchase of respondents' cattle was made by Douglas under such agreement, with the bank. Such proof was rejected, and, on appeal, this court reversed the lower court; the opinion being reported in 193 N. W. 675, 46 S. D. 460. For further statement of the facts in this case we refer the reader to that opinion. Douglas died before the second trial was had and his testimony to such agreement could not be had, but respondents contend that they established the agreement by the circumstances. This is in effect the position of respondents in this action. On the other hand, appellant takes the position that it was in no way connected with the transaction, except as the bank through which Douglas was doing his business; that the cattle were bought by Douglas, to be paid for by Douglas, the proceeds sent to the bank for Douglas and credited to Douglas; that although the check was written and Douglas' name signed by an officer of the bank, it was done for Douglas, upon his request, drawn on his account,

and constituted his check to be handled by the bank, in the same manner as if it had been drawn and signed by him in person. What the facts are and the character of the transaction is for the jury to determine.

[I]   The direct testimony of the officers of the bank supports appellant's position, and unless the circumstances surrounding the transaction will permit the inference that the bank was undertaking to finance Douglas in the purchase of the cattle the verdict cannot be sustained.   We therefore analyze the circumstantial evidence to determine what inference may be drawn. About a month after the transaction in question, November 12, 1920, Douglas closed his account and opened a new account under the head "F. Douglas Cattle Account" under an arrangement with a commission firm in Minneapolis to finance him in his cattle buying operations.   Prior to this time his account was run under the heading "F. Douglas"; and Exhibit A, being a page of the ledger of this account showing checks paid and deposits made from August 20, 1920, to November 12, 1920, when the account was closed, shows the account overdrawn on October 6th, $740,79, and on October 9th overdrawn $1,488.77.   The exhibit is not set out in detail in appellant's brief, but the daily balances only are given, and no balance is shown between the two above-named dates. Although $2,000 were deposited on October 6th at the close of the day there was an overdraft, and no further deposit was made until the 9th of October, so the account must have been overdrawn on the 7th of October when the check in question was given.   Thus it appears that, although the account was overdrawn, an officer of the bank drew a check on the overdrawn account, which, according to his testimony, he was willing to cash at the time.   This would seem to be a strong circumstance to support the inference that the bank was undertaking to finance Douglas in the purchase of Webster's cattle at least, if not in other transactions.   Having undertaken to pay for these cattle for Douglas by honoring his check on his overdrawn account, why should the bank be permitted to refuse to pay for them when the check is later presented for no other reason than that Douglas' account is overdrawn.   Out of some 43 checks drawn on Douglas' account immediately preceding the check to respondents the officers of the bank drew 23 of the checks aggregating more than $13,000

while Douglas drew 20 checks aggregating less than $6,500. Only 10 of those drawn by Douglas were for more than $100. A great deal of the time large overdrafts occurred. Proceeds of stock purchased by Douglas and sold on the market were received by the bank from the commission firms to which such stock was shipped. The stock was often billed in the name of the cashier of the bank. The commission firms carried their account in the name of the cashier, "F. Hodgson, care F. Douglas," and a large part of the business and correspondence was carried on with the bank cashier.

[2] The decision in Webster v. First State Bank of Peever, 193 N. W. 675, 46 S. D. 460, is the law of this case, not to be questioned on this appeal. We think the circumstances are such as to show more than mere usual banking operations between bank and customer, and the question of the bank's interest and relation to the transaction in question was properly submitted to the jury, and their finding should not be disturbed.

Appellant's argument is devoted chiefly to the effect of an oral acceptance of a check upon the liability of the acceptor. We do not think this question is involved in this case.

Finding no error in the record, the judgment and order of the trial court are affirmed.

MISER, Circuit Judge, sitting in lieu of SHERWOOD, J.