BENNETT *v.* HAINES.

1. BILLS AND NOTES—MARRIED WOMEN—LIABILITY.

Where a husband and wife filed a bill alleging that they had purchased a garage business from defendants, giving as part consideration therefor their promissory notes which they offered to pay if defendants would perform their obligation under the contract of purchase, and praying that forfeiture of the contract be enjoined, the court below was in error in holding that the wife was not liable thereon, under the statute protecting married women, since a married woman may become a joint debtor with her husband upon a proper consideration.

2. SAME—NEGOTIABLE INSTRUMENTS—EVIDENCE—BURDEN OF PROOF.

On the question of the negotiability of the notes, defendant purchaser thereof, who asked for judgment on the unpaid notes, had the burden of proof.

3. SAME—EVIDENCE—SUFFICIENCY.

Where plaintiffs' bill of complaint contained a copy of the notes which were not negotiable in form, and defendants' sworn answer admitted it was substantially correct, but none of the notes were put in evidence, defendants' evidence to show that the notes were negotiable, *held*, insufficient.

4. EQUITY—JURISDICTION—VENDOR AND PURCHASER — SUFFICIENCY OF PROOF.

A showing by the purchasers of a garage business that the sellers and the assignee of the notes given by plaintiffs as part of the consideration of the purchase had agreed that all debts of the concern contracted prior to the sale would be paid, and an offer by plaintiffs to pay the remaining notes if said obligation was carried out, but showing that said debts had not been paid and that defendants were threatening to forfeit plaintiffs' contract of purchase, *held*, sufficient grounds for equitable relief.

5. SAME—JURISDICTION MAY BE RETAINED TO SETTLE WHOLE CONTROVERSY.

Where the equity court acquired jurisdiction under the

allegations of the bill and proofs, it may be retained for final adjudication of the entire controversy, including an accounting as to the debts of the concern incurred prior to the date of the sale to plaintiffs.

Appeal from Wayne; Richter (Theodore J.), J. Submitted April 25, 1923.    (Docket No. 72.)    Decided December 19, 1923.

Bill by Frank G. Bennett and another against Fred W. Haines and others to enjoin the forfeiture of a sales contract, and for an accounting.    From the decree rendered, plaintiffs appeal.    Reversed.

*Charles C. Stewart*, for plaintiffs.

*Clark, Emmons, Bryant & Klein* (*James J. Ferris*, of counsel), for defendant Haines.

STEERE, J.   On or about May 25, 1920, plaintiffs bought under contract from defendants George and Ralph Nadel the business, good will, equipment, stock on hand and lease of the Trio Garage, Inc., located at 42 Randolph street, Detroit, at an agreed price of $6,000, paying $2,500 in cash and giving six promissory notes for the balance, five of them for $600 each payable serially on July, August, September, October and November 1, 1920, and one for $500 payable December 1, 1920.   All were without interest and identical in form, only varying as to amount of the last and times when due.   The first as set out in plaintiffs' bill is as follows:

"$600.00.            Detroit, Mich., May 25th, 1920.

"July 1st, 1920, after date, we jointly and severally promise to pay to George L. Nadel and Ralph E. Nadel six hundred dollars at Security Trust Company, Detroit, Michigan.   Value received.

                              "FRANK G. BENNETT,
                              "ANNA M. BENNETT."

The Trio Garage, Inc., was a corporation and held

in its corporate name the lease of the premises where it was located. As a part of the transaction the parties entered into a written agreement stating the Nadels owned the entire capital stock of the corporation and agreed to sell plaintiffs—

"on or before December 1, 1920, the entire capital stock of the aforesaid Trio Garage, Inc., consisting of five hundred (500) shares of common stock, par value of $10.00, in consideration thereof said parties of the second part (plaintiffs) hereby to pay said parties of the first part an additional sum of $1.00 in cash whereupon said parties of the second part shall become entitled to said 500 shares of stock."

It also provided that the Nadels should place the stock with the Security Trust Company in escrow,—

"to be held by it as long as there is no default in the payments to be made under this option, it being understood when the full payments are made hereof said Security Trust Company is hereby authorized and directed to deliver said stock certificates to the said Frank D. Bennett and Anna Bennett. It is further agreed that (if?) the parties of the second part should default in their payments to be made under this option when due as aforesaid, then this instrument shall be null and void and parties of the first part shall have the right to retain all sums of money as liquidated damages and parties of the second part shall relinquish and by these presents do relinquish to the said parties of the first part all claims to said stock either in law or equity and also all claims to all sums of money paid hereunder and no claim of parties of the second part under this option shall be effectual. It is further understood that all payments on this option are to be made to the Security Trust Company when due and upon default of any such payments as above provided for, the Security Trust Company is authorized to forthwith deliver said stock to the parties of the first part.    *    *    *

"Parties of the first part agree to warrant and defend at their own cost and charge any claims against the said Trio Garage incurred previous to the date hereof."

By a separate collateral agreement of the same date, signed by all parties including the "Trio Garage, Inc., by George L. Nadel, Pres.," attested by Ralph E. Nadel, Sec'y, plaintiffs were given possession of the property with full control and power to carry on the business so long as there was no default in their obligations, giving them when they had fulfilled all their obligations under the agreement "all dividends on the capital stock of said corporation that George L. Nadel and Ralph E. Nadel might be entitled to." Before the negotiations were closed the attorney engaged to draw up the papers raised the objection that the stock of the corporation might be incumbered by debts and there should be something to show the corporation was free of debt.    Both the Nadels asserted it owed  no debts, swearing to and signing an affidavit that it did not, which the attorney drew up.   Plaintiffs, who had previously owned a garage, soon took possession of the property after paying the $2,500 and continued the garage business there.    On the day the papers were executed the Nadels turned over the lease, stock book, 500 shares of stock, and a sealed file of other papers pertaining to the Trio Garage, its minute books and the so-called "option agreement," with a letter of that date (May 26, 1920) describing the same.    The conclusion of the letter is as follows:

"You are to hold the same in escrow during the life of the option agreement this day deposited with you and upon default in the payments of the said option you are to return the same, together with the stock certificates, to Ralph E. Nadel and George L. Nadel, and upon the performance of the said option you are to deliver the same to Frank G. Bennett and Anna Bennett.

"RALPH E. NADEL,
"GEORGE L. NADEL.

"We agree to the foregoing.
"FRANK G. BENNETT,
"ANNA M. BENNETT.

"We agree to hold the said option and described papers in escrow in accordance with the terms of the above letter.

"SECURITY TRUST COMPANY."

On May 27, 1920, George Nadel sold the notes he received from plaintiffs to defendant Haines, who stated he had "been in the business of buying commercial paper," knew George Nadel for about a year, but before he gave his check for the amount he went down to the garage and assured himself "that this was a real transaction. * * * read the contracts and knew what was in them and I took it." The instrument by which he took it is as follows:

"May 27th, 1920.

"For value received, the undersigned hereby agrees and does sell and assign to Fred W. Haines all right, title and interest in and to the optional agreement attached, and further guarantees the performance of said agreement and all its terms. The undersigned further agree in the event of the default and repossession of the premises to pay to the assignee any deficiency in the net proceeds of such default and repossession, arising either from the nonpayment of the notes or the terms of said contract, and to further pay such reasonable attorneys' fees in connection therewith.

"Any extensions which may be granted in respect to said optional agreement, or said notes, by the assignee shall not in any manner release said indorsements or guaranty the undersigns.

"GEORGE L. NADEL,
"RALPH E. NADEL.

"Witness:
"GERALD F. WILDER."

Haines served no notice of this transaction on plaintiffs at that time, but it later forcibly came to their knowledge. He did, however, at once give notice to the Security Trust Company and serve on it a copy of the escrow letter, which is set up in its answer.

When plaintiffs had settled down to running the

business of the Trio Garage, Inc., all the stock of which they had contracted to buy from the Nadels as related with the latter's assurance that it had no debts, they began to receive from its creditors monthly statements of its past-due debts incurred before they bought the property, demanding immediate payment. These they at first turned over to George Nadel, who was president of the Trio Garage, Inc., which he would promise to take care of, but the statements would come again the next month and so on with insistent demands. Plaintiffs convincingly show that in response to their demands that these be paid both George Nadel and Haines made repeated promises to induce them to keep up their payments, which were never fulfilled and none of the old indebtedness was ever paid by the Nadels or Haines. They both deny making any such promises, or of even knowing of any debts owed by the Trio Garage, Inc., until after Haines had bought the notes.

Plaintiffs met four of their notes of $600 each, paid to the Security Trust Company as provided, and paid a judgment of the Edison Electric Company against the Trio Garage of $154.04 for a bill antedating their purchase, making a total of $5,054.04 paid by them, leaving but $945.96 still unpaid of the purchase price of $6,000 they agreed to pay for the property, while plaintiffs claim, and it is not denied, that the unpaid debts of the corporation incurred before they made the purchase amount to over $1,400.

Plaintiffs' counsel testified that after old claims against the garage commenced to come in to the Bennetts they at first refused to make further payments until those claims were cleaned up, and in more than one interview which he had with Mr. Haines the latter assured him they would be taken care of; that finally, on October 4, 1920, he had another interview with Haines, who then denied any responsibility in the matter, asserted that he had purchased those notes

and proposed to hold them, followed by some discussion as to whether or not Haines stood in the same position as the Nadels by reason of his having taken an assignment of their rights.

On October 6, 1920, after plaintiffs had refused to make further payments until the old indebtedness of the garage company incurred before May 26, 1920, was cleaned up, Haines served notice on the Security Trust Company that plaintiffs were in default under the terms of the option agreement which had been deposited with the company and had not made the payments required by its terms, and under the terms of the escrow deposit with the company of the stock certificates, stock book, lease, etc., of the Trio Garage, Inc., he therefore made demand upon it—

"for the immediate delivery of said property to me, the undersigned, as the assignee of the said Ralph E. Nadel and George L. Nadel, under an assignment dated May 27, 1920, and a copy of which has been deposited with you. You are hereby required to deliver to me, forthwith, all of the property above enumerated and thus deposited with you."

On November 1, 1920, plaintiffs filed this bill of complaint stating the situation from their standpoint, alleging they were ready and willing to pay all that yet remained unpaid on their contract for the property represented by the stock in said corporation, offering to deposit the money therefor with the court, and praying for an injunction to restrain defendants from treating the contract as forfeited until there should be deposited in court by or for the Nadels, with whom they originally contracted, satisfactory assurances that all debts of the garage company prior to May 26, 1920, were paid, and that the Nadels and Haines be enjoined from demanding of said Security Trust Company the stock of the Trio Garage, Inc., etc., until further order of the court, and for an accounting. A preliminary injunction was granted. Defendant Haines

answered in denial asking a decree in his favor for the amount yet unpaid on his notes.    The Security Trust Company answered with explanations and denials, putting plaintiffs to their proof, and alleging uncertainty as to the relative rights of the parties under the escrow agreement, asking to be advised by the court as to its rights, duties, and liabilities in the matter.    The Nadels did not answer and the case went by default against them.

The case was twice heard.    At conclusion of the first hearing it was submitted and taken under advisement by the court awaiting briefs of counsel.    Before a decision was reached Haines made application to reopen the case, supported by his affidavit stating that upon the hearing he produced the notes which were  yet unpaid but they had since been mislaid or lost; that plaintiffs had taken the position the notes were not negotiable, while they were in fact negotiable as would more fully appear if the original notes yet held by him or those paid and returned to plaintiffs were introduced in evidence, asking an order opening the case and permitting him to introduce further testimony.    The motion was opposed, but granted. Upon the second hearing the form of the notes was made an issue.    None of the notes given by plaintiffs in this case, whether paid or unpaid, were produced. Haines claimed and testified that on the first hearing he had the unpaid notes in court and passed them to his counsel, they were seen by opposing counsel and in evidence as he supposed; that he at first thought he might have put them in his pocket among other papers he had produced, but on diligent search he had been unable to find or get trace of them from any source; that he remembered their form, knew they were payable to order, and testified that their substance and form were as follows:

"May 25th, 1920, Detroit, Michigan.
"Pay to the order of Ralph Nadel and George L.

Nadel. No it was—they were 1, 2, 3, 4, 5 and 6 months after date, we promise to pay to the order of George L. Nadel and Ralph E. Nadel the sum of six hundred dollars at the Security Trust Company, Detroit, Michigan, without interest. Value received, and signed by Frank Bennett and his wife, Anna Bennett. I don't remember for certain whether the words 'or order' preceded or followed the names. I believe it followed it."

Plaintiffs' counsel claimed and testified that when he prepared the bill of complaint he had before him and copied the paid note as set out therein; that it was carefully compared and the copy in the bill is an exact copy; that Haines admitted it in his answers that said notes were all in substantially the form and figures set out in paragraph 7 of plaintiffs' bill and made no claim to the contrary until after the case was first heard and submitted; that if Haines had the notes with him during the former hearing they were not introduced in evidence or seen by opposing counsel and the papers he produced at that time amongst which he claimed were the notes, he put back in his pocket and took them with him.

The case having been again submitted the court held that plaintiff Anna Bennett could not be held liable on the notes because a married woman; that the Nadels were liable to plaintiffs for a $169.44 judgment of the electric light company they were obliged to pay, that Frank G. Bennett was liable to Haines for the unpaid balance on the contract as represented by the notes he had bought, amounting to $1,203.34, and entitled to foreclose the security held in escrow by the trust company, rendering a decree accordingly.

While the questions raised for appellants are not concisely stated, but run at random through counsel's brief with frequent statements of fact without reference to pages of the record to sustain them, the principal points urged against the decree appealed from

seem to be that the notes were not negotiable; Haines was not a *bona fide* holder in due course; as assignee of the contract his rights were subject to the same defense as those of his assignors; and coverture of Anna Bennett as maker of the notes.

The court held that, being a married woman, Mrs. Bennett was protected by the statute, because "the note of a married woman in the hands of a *bona fide* holder is no better than it is in the hands of the payee." She was a joint purchaser of the property with her husband and the testimony shows she furnished the main part of the consideration. It is evident, as counsel states, that in so holding and casting the additional burden upon her husband the court did it "in such manner as to throw it upon her also." While not of controlling importance, we are unable to agree with the conclusion of the court upon that proposition as applied to the situation presented here. In *Johnson* v. *Sutherland,* 39 Mich. 579, cited by the court in support of the ruling, it is also said:

"A consideration connected with her separate property is necessary in all cases where she is the maker of such paper, * * * it cannot be enforced unless made for the kind of consideration referred to."

In *Wineman* v. *Phillips,* 93 Mich. 223, 231, it is said:

"A married woman may become a joint debtor with her husband upon a proper consideration." *Vide,* also, *Marx* v. *Bellel,* 114 Mich. 631; *Ehle* v. *Looker,* 182 Mich. 248.

Mrs. Bennett is a plaintiff and moving party in initiating this litigation. She alleges a consideration for these notes, given on the purchase price of property of which she was a purchaser, and offers to pay them if defendants will perform their obligation under the terms of the contract of purchase.

We cannot agree with the conclusion of the court

that those notes, all concededly alike in form, were shown negotiable by a preponderance of proof.     In his affirmative claim for a judgment on the unpaid notes the burden of proof rested with Haines.     Back in November, 1920, when plaintiffs' counsel prepared this bill of complaint he described the notes and challenged attention to them by setting one out in full, copied from a paid and canceled one, which his client then produced for that purpose and was handed back to him after.     The copy in the bill of complaint was carefully compared with the original, as two witnesses testified, Haines then had his unpaid notes and there could be no possible object in making a false copy, and no such reason for keeping the canceled notes as Haines had for preserving those he had alive and unpaid.     With his attention thus challenged to the form of the notes in a separate paragraph of the bill and the unpaid notes then in his possession he expressly admitted under oath in a corresponding paragraph of his sworn answer that "said notes were all substantially in the form and figures set forth in the seventh paragraph of plaintiffs' bill."     In December, 1921, the case was heard and submitted without the fact being questioned.     His application to open the case for further testimony was a *quasi* admission that as the case then stood on pleadings and proofs his rights were limited to those of the Nadels and it was necessary to amend his answer to raise the issue he proposed, which he did by permission of the court.     Upon the trial both parties claimed to be unable to produce any of the notes, canceled or uncanceled.     Haines having admitted the correctness of their copy 2 years before, plaintiffs had no special reason for preserving their canceled notes.     He did have reason for preserving his unpaid ones.     His oral evidence as to their being negotiable in form is met by equally positive testimony to the contrary.     George Nadel was president of the Trio Garage corporation according to the

records, and papers in evidence signed by him, and represented it in the negotiations resulting in this sale. Ralph Nadel's activities in the proceeding, so far as appears, were confined to signing on the dotted line. He was not called as a witness. George was called and testified positively that the notes were payable to order. In some other respects, at least, his testimony casts doubt on his sincerity and veracity. He stated his occupation was real estate, he guessed he was one of the defendants in this case, denied the Trio Garage, Inc., owed any debts when they sold to plaintiffs. Of the notes he said:

"Those notes were on a printed form. There were no erasures, cancellations or words stricken out. One thing I know it was an old form of note. * * * It said without interest.

"*Q.* State whether or not without interest was written on any of the notes?

"*A.* Yes, that was written on the note."

Asked by defendants' counsel if he had any conversation with anyone with reference to discounting the notes he said:

"There was a discussion had at the time how the notes should be drawn. * * * I suggested that the note had to be negotiable note; that I would have to convert it into cash. That is the only way I wanted to collect it on that business and that was settled."

Defendants having opened the door on this question, plaintiffs' counsel called a witness named Scripter who was present when the notes were drawn and in answer to counsel's question as to what was said about the notes started to tell what Bennett asked and said, when an objection was interposed by the defense on the ground that Haines was not present, and the court said: "I will sustain the objection; state what was said between the parties." Counsel then asked: "*Q.* What did he say about the notes?" This was

objected to and the court ruled: "I sustain the objection; you have an exception."

Touching the affairs of the corporation George was asked and answered on cross-examination, in part, as follows:

"*Q*. You made an affidavit at that time that there were no debts against the corporation?

"*A*. I don't remember making the affidavit.  *  *  *

"*Q*. Wasn't there an affidavit sworn to by you and the other one that there were no debts?

"*A*. No, sir; there was not.  I know an affidavit if I see one.  *  *  *

"*Q*. How much was the entire stock?

"*A*. If I recollect it was about $5,000.

"*Q*. Was it all paid in?

"*A*. I don't know.

"*Q*. Wasn't there only $3,000 paid in?

"*A*. I don't know.  I did not know those things.  I was an officer and director of the company.

"*Q*. What officer were you?

"*A*. I believe I was one of the vice-presidents or treasurer.

"*Q*. Weren't you president?

"*A*. No.  I don't know.

"*Q*. Didn't you sign papers as president?

"*A*. I cannot say.  *  *  *

"*Q*. You know nothing about the debts of the corporation?

"*A*. I know the debts were discussed at the time of the transaction.

"*Q*. You made a promise to go and pay them?

"*A*. Every debt which was discussed at the time was fully paid.  *  *  *

"*Q*. What have you paid?

"*A*. I paid for what I received out of the garage.

"*Q*. Tell me one that you paid.  What company or what person did you pay?

"*A*. I don't know.

"*Q*. You didn't pay anybody, did you.

"*A*. There were some paid.

"*Q*. What did you pay?

"*A*. I cannot tell you from my mind.  *  *  *

"*Q*. Did you pay the Turner Company?

"*A.* I had nothing to do with receipts or payments or bills, I tell you.

"*Q.* What bills did you ever pay?    What did you pay Scripter?

"*A.* I had nothing to do with paying him.

"*Q.* You gave him your note, didn't you?

"*A.* I indorsed the note.

"*Q.* And it was never paid.    He has it yet, hasn't he?

"*A.* That is a matter I never asked.

"*Q.* You never paid one cent of that?

"*A.* Personally, no; I pay my own bills.

"*Q.* You don't regard this your own bill?

"*A.* No."

Upon this record we are unable to conclude Haines has affirmatively shown that the notes he took from George Nadel were negotiable paper innocently purchased by him in due course.    The indorsement and delivery of those notes by the Nadels, while operating as an assignment to the purchaser, were contemporaneous with the assignment of the agreement to which they related.    Before accepting them Haines took and read the agreement in connection with which they were given.    He admits that the purchase was induced by the agreement.    He knew nothing of the responsibility of the makers and although he says he knew George Nadel was responsible, admits he first went down to the garage and assured himself "this was a real transaction," read the contract, knew what was in it and "took it."    He therefore knew all payments were to be made, not to the holder of the notes but "to the Security Trust Company" and that the first parties to the contract, whose place in it he took by the assignment, agreed "to warrant and defend at their own cost and charge any claims against the said Trio Garage incurred previous to the date hereof." The "option agreement" with which he familiarized himself before taking an assignment of it and the accompanying notes show clearly that title to the

property was reserved in the Nadels and it was a conditional sale. *Toledo Scale Co.* v. *Gogo,* 186 Mich. 442 (Ann. Cas. 1917E, 601) ; *Owen & Co.* v. *Keller,* 206 Mich. 555. A second delivery beyond the escrow was made necessary by its terms to carry the title. Haines subjected himself to the same defenses as could be and were made against his assignors. Under the fraud imposed upon them by the Nadels and the situation which arose by the joint assurances of the Nadels and Haines inducing them to continue payments, they have stated in their bill and shown grounds for equitable relief. They do not seek rescission but offer to fully perform on their part and ask an injunction against forfeiture until defendants perform on their part or, in effect, for a reduction of the purchase price to the extent, or amount, they were defrauded by the false representations that the Trio Garage, Inc., owed no debts when the contract was entered into. This they are entitled to. Having acquired jurisdiction under allegations in the bill and proofs of ground for equitable relief the court may retain the same for final adjudication of the entire controversy.

Plaintiffs pray for an accounting as to the debts of the Trio Garage, Inc., incurred by the Nadels prior to May 26, 1920. While they made general proof of pressing bills for such indebtedness of over $1,400, to enforce which they say the creditors had been persuaded to refrain pending this litigation, their accuracy and the legal liability of the garage company was not clearly determined by the court, or shown, except the judgment of the electric light company. An accounting should be had and a legal determination made as to the validity of those claims, whether paid or unpaid. The balance between them and the amount yet unpaid by plaintiffs on their contract should be adjudicated and decree rendered accordingly. The injunction will stand until such adjudication is had. When and if defendants show to the satisfaction of

the court that all valid debts of the garage company incurred prior to May 26, 1920, have been paid the injunction may be released.   If not, upon payment into court of the unpaid balance of the purchase price with legal interest after due or, on satisfactory proof before the court after notice to defendants that they have paid proven claims of the old indebtedness of the garage company to that amount, plaintiffs may have an order authorizing the Security Trust Company to deliver to them the stock certificates and other papers relating to the Trio Garage, Inc., now held by it in escrow.   The Security Trust Company, which has faithfully observed its obligations under the escrow, may be protected and compensated as the court shall determine.

The decree appealed from is reversed, with costs of this court to plaintiffs, and the case remanded for further proceedings in harmony with this opinion.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.